

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

GROVER SELLERS
XXXXXXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

Hon. Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Mr. Sheppard:

Opinion No. O-6068
Re: Under the facts submitted, is
the agent of an oil company a "motor
carrier" or "contract carrier" liable
for the gross receipts tax provided in
Article 7066b, R.C.S. of Texas?

You present for the opinion of this department two questions which appear at the conclusion of your letter, which we quote in full as follows:

"Article 7066b, Sec. (a) provides as follows:

"'Each individual, partnership, company, association, or corporation doing business as a "motor bus company" as defined in Chapter 270, Acts Regular Session of the Fortieth Legislature, as amended by the Acts of 1929, First Called Session of the Forty-first Legislature, Chapter 78, or as "motor carrier" or "contract cerrier" as defined in Chapter 277, Acts Regular Session of the Forty-second Legislature, over and by use of the public highways of this State, shall make quarterly on the first day of January, April, July, and October of each year, a report to the Comptroller, under oath, of the individual, partnership, company, association, or corporation by its president, treasurer, or secretary, showing the gross amount received from intrastate business done within this State in the payment of charges for transporting persons for compensation and any freight or commodity for hire, or from other sources of revenue received from intrastate business within this State during the quarter next preceding. Said individual, partnership, company, association, or corporation at the time of making said reports, shall pay to the State Treasurer an occupation tax for the quarter beginning on said date equal to two and two-tenths (2.2) per cent of said gross receipts, as shown by said report. Provided, however, carriers of persons or property who are required to pay an intangible assets tax under the laws of this State, are hereby exempted from the provisions of this Article of this Act.'

"In defining Motor Carrier and Contract Carrier, Sec. 1a of Art. 911b States:

Hon. Geo. H. Sheppard, page 2 (O-6068)

"'Provided, however, that the term "Motor Carrier" and the term "Contract Carrier" as defined in the preceding section shall not be held to include: sub-sec. (c) of the same section and Article provides, 'Where merely incidental to a regular, separate, fixed and established business, other than a transportation business, the transportation of employees, petroleum products, and incidental supplies used or sold in connection with the wholesale or retail sale of such petroleum products from the refiner or place of production or place of storage to the place of storage or place of sale and distribution to the ultimate consumers, in a motor vehicle owned and used exclusively by the marketer or refiner, or owned in whole or in part and used exclusively by the bona fide consignee or agent of such single marketer or refiner, as well as where merely incidental to a regular, separate, fixed and established business, other than a transportation business, the transportation of petroleum, employees, material, supplies, and equipment for use in the departments of the petroleum business; by the bona fide consignee or agent as used herein being hereby defined and construed, for the purpose of this Act, to mean a person under contract with a single principal to distribute petroleum products in a limited territory and only for such single principal....'

"I have a case in mind where a party is agent of one of the major oil companies and said agent with his own truck hauls petroleum products from the oil company's refinery to his wholesale bulk station, and the oil company pays the agent for such hauls at the same rate as they would pay some other contract motor carrier. In making the hauls to his own bulk station or retail station, the motor carrier passes through or contacts two or more incorporated towns.

"Under the contract with the oil company, the agent is responsible for the products from the time it is loaded on his truck at the refinery until sold.

"Please tell me if the motor carrier is liable for the gross receipts tax as provided for in Art. 7066b.

"1st Where he hauls petroleum products from refinery to his own bulk or retail station?

"2nd Where he hauls petroleum products from refiner to other parties or concerns?

"For your convenience, you will find attached copy of contract form between the oil company and agent."

Supplementing your letter you submit certain data consisting of "Wholesale Commission Agent's Contract," riders to Commission Agent's Contract, "Consignment Agreement," and what is designated as "Schedule A," and letter attached thereto, in use by certain oil companies covering the

operations of their distributing agents, all of which are to be considered in connection with this opinion.

Our problem is to determine whether or not the transportation of the petroleum products under the circumstances revealed in your opinion request is taxable under Article 7066b, R.C.S. which is a part of the Omnibus Tax Bill passed by the 47th Legislature, which is H.B. 6, Ch. 184, which was approved on May 1, 1941, and became effective on the same date.

This Article, as it appears in V.R.C.S. reads as follows:
(Here follows a verbatum copy of the Article as given on page one of this Opinion and is omitted here for brevity)

The above tax act refers to Ch. 277, Acts, Regular Session, 42nd Legislature, Article 911b, V.R.C.S., for the definition of "motor carrier" and "contract carrier" subject to the tax thereby levied. We quote said definition from the statute referred to:

"The term 'motor carrier' means any person, firm, corporation, company, copartnership, association or joint stock associates, and their lessees, receivers or trustees appointed by any Court whatsoever, owning, controlling, managing, operating or causing to be operated any motor propelled vehicle used in transporting property for compensation or hire over any public highway in this State, where in the course of such transportation a highway between two or more incorporated cities, towns or villages, is traversed; provided that the term 'motor carrier' as used in this Act shall not include and this Act shall not apply to motor vehicles operated exclusively within the incorporated limits of cities or towns." (Emphasis ours)

"The term 'contract carrier' means any motor carrier as hereinabove defined transporting property for compensation or hire over any highway in this State other than as a common carrier."

At the same session of the Legislature that passed the Omnibus Tax Bill, of which the tax act here under consideration is a part, but at a subsequent date, the above definition of a "motor carrier" and "contract carrier" was amended so as to exclude certain types of transportation by adding the subsections as follows:

"Section 1a (1) Provided, however, that the term 'Motor Carrier' and the term 'Contract Carrier' as defined in the preceding section shall not be held to include:

"(a) Any person having a regular, separate, fixed, and established place of business, other than a transportation business, where goods, wares, and merchandise are kept in stock and are primarily and regularly bought from the public or sold to the public or manufactured or processed by such person in the ordinary course of the mercantile, manufacturing, or processing business, and who, merely incidental to the operation of such business, transports over the highways of this State such goods of which such person is the bona fide owner by means of a motor vehicle of which such person is the

bona fide owner; nor

"(b) Any person transporting farm implements, livestock, livestock feedstuffs, dairy products, horticultural products, floral products, agricultural products, timber in its natural state, or wool and mohair of which such person is the bona fide owner on a vehicle of which he is the bona fide owner to an from the area of production and to and from the market or place of storage thereof; provided, however, if such person (other than a transportation company) has in his possession under a bona fide consignment contract livestock, wool, mohair, milk and cream, fresh fruits and vegetables, or timber in its natural state under contract as an incident to a separate, fixed, and established business conducted by him the said possession shall be deemed ownership under this Act.

(c) Where merely incidental to a regular, separate, fixed, and established business, other than a transportation business, the transportation of employees, petroleum products, and incidental supplies used or sold in connection with the wholesale or retail sale of such petroleum products from the refinery or place of production or place of storage to the place of storage or place of sale and distribution to the ultimate consumer, in a motor vehicle owned and used exclusively by the marketer or refiner, or owned in whole or in part and used exclusively by the bona fide consignee or agent of such marketer or refiner; as well as where merely incidental to a regular, separate, fixed, and established business, other than a transportation business, the transportation of petroleum, employees, material, supplies, and equipment for use in the departments of the petroleum business by the bona fide owner thereof in a vehicle of which he is the bona fide owner; bona fide consignee or agent as used herein being hereby defined and construed, for the purpose of this Act, to mean a person under contract with a single principal to distribute petroleum products in a limited territory and only for such single principal."

We must of necessity, in considering the question presently before us, determine whether or not we should be governed by the definition of "motor carrier" and "contract carrier" as it appears in the original Act before it was amended by adding the two foregoing subsections. The amendment as passed finally by the Senate on May 14, 1941, and approved May 16, 1941, became effective ninety days after July 3, 1941, date of adjournment. This amendment was, therefore, passed thirteen days after the Omnibus Tax Bill was passed and approved, and became effective on October 3, 1941, following the effective date of the Omnibus Tax Bill on May 1, 1941.

We have concluded that we must be governed by the definition of "motor carrier" and "contract carrier" contained in the original act specifically referred to in the taxing act. We believe the weight of authority, and indeed the holding of the Supreme Court of this State, supports this conclusion. Sutherland on Statutory Construction, Vol. 2, page 548, is as follows:

"A statute of specific reference incorporates the provisions referred to from the statute as of the time of adoption without subsequent amendments, unless the legislature has expressly or by strong implication shown its intention to incorporate subsequent amendments with the statute. In the absence of such intention subsequent amendment of the referred statute will have no effect on the reference statute. * * *"

Chief Justice Cureton in the case of Trimmier v. Carlton (Supreme Court) 296 S.W. 1070, laid down the rule as follows:

"Statutes which refer to other statutes and make them applicable to the subject of legislation are called 'reference statutes,' and are a familiar and valid mode of legislation. The general rule is that when a statute is adopted by a specific descriptive reference, the adoption takes the statute as it exists at that time, and the subsequent amendment thereof would not be within the terms of the adopting act. * * *"

Having thus concluded, we pass to the more difficult question as to whether or not in any event the Legislature intended that this tax be imposed only upon "motor carriers" and "contract carriers" subject to regulation by the Railroad Commission under the regulations imposed by Ch. 277, Acts of the 42nd Legislature, in which the original definitions are found. We are constrained to the view that the Legislature did not intend by this reference to make the imposition of the tax dependent upon whether or not such "motor carrier" and "contract carrier" as therein defined were subject to regulation by the Railroad Commission. There is no legislative expression in either act making the one dependent upon the other; one is a regulatory measure, the other a taxing measure. The reference in the taxing act to the regulatory act for a definition of "motor carrier" and "contract carrier is the same as if these definitions had been incorporated in the taxing act direct instead of by reference. Had this been done, obviously it could not be logically argued that an amendment subsequently passed to the regulatory act limiting the preexisting definition of "motor carrier" and "contract carrier" would also operate to limit these same terms as defined in the taxing act. As stated above, the acts cover different subjects, one regulation, the other taxation. They are not in pari materia. We think the real test is whether or not such "motor carrier" or "contract carrier," as defined in the taxing act, transports property for compensation or hire over any public highway in this State where the transportation is over a highway between two or more incorporated cities, towns, or villages.

Liability for the tax imposed by virtue of Article 7066b, supra, must first depend upon whether or not the "motor carrier" or "contract carrier" transports for compensation or hire. Your first question, read in connection with the preceding statement made in your opinion request, that the agent of one of the major oil companies with his own truck hauls petroleum products from the oil company's refinery to his wholesale bulk station, and the oil company pays the agent for such hauls, at the same rate it would pay some other contracor motor carrier, presupposes that such an agent is in

effect transporting for compensation or hire. Such being the case, it is our conclusion that the gross receipts received by such agent would be subject to the tax imposed by virtue of this article of the statutes. More clearly would such an agent, who hauls petroleum products from the refinery to other parties, others than his own concern, and receives compensation or hire therefor, is engaged in transportation as a "contract carrier," and the receipts received by him in such oprations would be subject to the tax imposed by virtue of this statute. If we are correct in our assumption that such transportation is compensated for either directly or indirectly by an adjustment in the price of the product so transported from the refinery to the agent's bulk sales station, and where such agent transports for others for compensation or hire, both operations would be subject to the gross receipts tax fixed by this article of the statutes.

In other words, an agent as designated in your letter, in the language of the foregoing definition of "contract carrier" or "motor carrier," is a "person, firm, or corporation"; such agent "owns, controls, manages, operates or causes to be operated a "motor propelled vehicle used in transporting property for compensation or hire between two or more incorporated cities, towns, or villages," as distinguished from exclusive operation within cities or towns. We think such operation falls squarely within the purview of the statutory definition, whether treated as a "motor carrier" or "contract carrier," and hence, as above stated, is subject to the tax imposed by Article 7066b, supra.

We think it fair to say, however, that the question presented by you is one of first impression, and it has not been definitely passed upon by the courts of our State; but whatever doubt exists we feel compelled to resolve it in favor of the tax.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By /s/ L. P. Lollar

L. P. Lollar
Assistant

LPL:AMW:egw

APPROVED SEP 22, 1944
/s/ Grover Sellers
ATTORNEY GENERAL OF TEXAS

Approved
Opinion Committee
By B W B
Chairman